Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

Jacob U. Ginsburg (*pro hac vice* anticipated)
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
KIMMEL & SILVERMAN, P.C.
30 East Butler Ave.
Ambler, PA 19002
Telephone: (267) 468-5374
Facsimile: 215-540-8817

*Attorneys for Plaintiff Javier Garcia, individually, and on behalf of all others similarly situated*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER GARCIA*, individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL EXCHANGE VACATION CLUB, a California corporation, and GLOBAL EXCHANGE DEVELOPMENT CORP., a Nevada corporation, RESORT VACATIONS, INC., a Nevada corporation, and DOES 1-10, inclusive,<br><br>Defendants. | No. 8:24-cv-2662<br><br>**CLASS ACTION COMPLAINT FOR**<br><br>**(1) VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(c)(5) AND 47 C.F.R. § 64.1200(c) AND**<br><br>**(2) VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(c)(5) AND 47 C.F.R. § 64.1200 (d).**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Javier Garcia ("Garcia" or "Plaintiff") individually and on behalf of all others similarly situated, files this Class-Action Complaint against Defendants Global Exchange Vacation Club ("GEVC"), Global Exchange

Development Corp. ("GEDC") Resort Vacations, Inc., ("RVI") and Does 1 to 10 (hereinafter collectively referred to as "Defendants"). In support thereof, Plaintiff states as follows:

### NATURE OF THE CASE

1.    Plaintiff brings this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendants. Defendants violated Plaintiff and the putative class-members' rights by making two or more solicitation calls to residential subscribers whose numbers were registered on the Do Not Call Registry. Those acts and omissions, which are described at length herein, were in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. and the TCPA's corresponding regulations promulgated by the Federal Communications Commission ("FCC") at 47 C.F.R. § 64.1200 *et seq.*

### BACKGROUND ON THE TCPA

2.    In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

3.    A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4.    The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) et seq., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

5.    Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

6.      47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7.      The TCPA also provides protections for persons who receive prerecorded or artificial voice calls without the caller (or the company acting on the caller's behalf) first obtaining the recipient's prior express written consent to receive such calls. *See* 47 U.S.C. § 227(b)(1);  47 C.F.R. §§  64.1200(a)(3), (f)(9). The penalty for violating these provisions is $500 per call and up to $1,500 per call placed in willful violation of the TCPA. 47 U.S.C. § 227(b)(3)

8.      Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the Federal Communications Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

9.      In fact, in 2021 alone, there were over five million complaints from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022), https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

10.      The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, The Wall Street Journal, March 28, 2019, https://www.wsj.com/articles/

the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

11.    This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

12.    This Court has personal jurisdiction over Defendants which are headquartered and incorporated, and conduct business, in the State of California.

13.    Defendants maintain their headquarters within this District in the State of California.

14.    Accordingly, personal jurisdiction exists, and venue is proper under 28 U.S.C. § 1391(b)(1).

## PARTIES

15.    Plaintiff Javier Garcia is an individual who resides in Krugerville, Texas.

16.    Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

17.    Defendant Global Exchange Vacation Club ("GEVC") is a California corporation which registered 27405 Puerta Real, Suite 100, Mission Viejo, California 92691 as its address with the California Secretary of State.

18.    GEVC is the homeowner association for a multi-location time-share plan with accommodations in locations worldwide. GEVC holds (and sells) various real estate interests including timeshares.

19.    Defendant Global Exchange Development Corp. ("GEDC") is a Nevada corporation which registered 30448 Rancho Viejo Road, Suite 150, San Juan Capistrano, California 92675 as its address with the California Secretary of State.

20.    GEDC manages GEVC, and uses telemarketing to market GEVC's timeshares via a vendor.

21.    Defendant Resort Vacations, Inc. ("RVI") is a Nevada corporation which registered 27405 Puerta Real, Suite 100, Mission Viejo, California 92691 as its address with the California Secretary of State. RVI is a real estate brokerage which participates with GEDC in selling GEVC's timeshares.

22.    Each Defendant is a "person" as that term is defined by 47 U.S.C. §153(39).

23.    Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 10, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff.

24.    Plaintiff is informed and believes, and therefore alleges, that all Defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, ostensible agents, conspirators, partners, alter egos, and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

25.    Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees,

representatives, and insurers.

26. All Defendants, including GEVC, GEDC, RVI and Does 1 through 10, are collectively referred to as "Defendants." Whenever this complaint refers to any act of Defendants or acts of GEVC and/or GEDC and/or RVI, the allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

## FACTUAL ALLEGATIONS

27. At all times relevant hereto, Plaintiff, Javier Garcia, owned a cell phone, the number for which was 214-XXX-8681 ("8681 Number").

28. Plaintiff registered that cell phone number on the federal (or national) Do Not Call Registry (hereafter, "NDNCR") in January of 2006 in order to obtain solitude from invasive and irritating telemarketing calls.

29. At all times relevant hereto, Garcia used his cell phone primarily for residential purposes.

30. Plaintiff registered the 8681 Number on the NDNCR to gain the protections of the NDNCR, including the benefit and attainment of solitude from invasive, unwanted, annoying, and irritating telemarketing calls.

31. Plaintiff's 8681 Number was registered to Plaintiff as an individual and not to a business, and Plaintiff used the subject cell phone number primarily for residential purposes, including personal communication between family and friends, and other common domestic consumer uses.

32. Beginning in or around June 5, 2021, Defendant called Plaintiff on his cellular telephone number on a repetitive and continuous basis for the purpose of soliciting timeshare vacation clubs.

33. The Plaintiff knew these telemarketing communications were from the Defendant because the live agent announced they were calling on behalf of GEVC.

34.    Plaintiff found the telemarketing communications received to be annoying, irritating, and disruptive.

35.    These communications were not made for "emergency purposes," but rather for solicitation purposes.

36.    The Plaintiff knew these telemarketing communications were for solicitation purposes because the live agents announced they were calling "on behalf of Global Exchange Vacation Club" and delivered a sales pitch regarding their timeshares and vacation club membership prospects.

37.    During that time, Plaintiff was not seeking any timeshares or vacation club membership and did not find any value in obtaining such products/services.

38.    Plaintiff did not provide express written consent or any consent for those solicitations to the Defendants.

39.    Plaintiff did not have any established business relationship with any of the Defendants prior to the telemarketing campaign.

40.    Plaintiff had not visited the Defendants' website prior to receiving these solicitations.

41.    Plaintiff did not request information from Defendant regarding timeshare vacation clubs or other related products or services.

42.    Despite the absence of any business relationship, written consent or even verbal consent/permission, Defendants placed a series of telemarketing calls to Garcia, soliciting timeshare and vacation products/services he did not want or need.

43.    On June 3, 2021 call, Mr. Garcia answered a call from (214) 524-1550. Garcia stayed on the line and engaged with the calling party to confirm the identity of the company for whom she was unlawfully calling. The calling party identified herself as Toni Gonzalez and said she was with "Global Exchange Vacation Club."

44.     Mr. Garcia asked her to send information about GEVC and their timeshare presentations.

45.     Thereafter, Ms. Gonzalez sent Mr. Garcia an email which included a flyer for "GEVC Dallas" and advised the callback number for GEVC was 855-916-3699.

46.     The flyer had a confirmation code of "HRI" and listed a presentation to take place at 3225 W. Airport Fwy Suite 100, Irving, Texas 75062.

47.     The same day as that call, Mr. Garcia wrote to GEVC and advised that the calls were unwanted and in violation of the TCPA.

48.     Accordingly, to the extent any business relationship was established during the course of that June 3, 2021 call, it was terminated and revoked that day-in writing.

49.     Nonetheless, GEVC called Garcia at least seven more times.

50.     Calls made by or on behalf of Defendants to Plaintiff include but are not limited to the following:

| Date and Time of Call | Number on Caller ID |
|---|---|
| 06.03.2021 at 5:34 pm (received call) | 214.524.1550 |
| 06.05.2021 at 6:01pm (missed) (Voicemail) | 469.649.5542 |
| 06.06.2021 at 2:38pm (declined) | 469.649.5542 |
| 06.25.2021 at 6:16pm (missed) | 469.649.5542 |
| 06.25.2021 at 6:39pm (declined) | 469.649.5542 |
| 06.05.2021 at 6:00pm (missed) | 855.916.3699 |
| 06.05.2021 at 6:06pm (missed) | 855.916.3699 |
| 06.06.2021 at 2:30pm (missed) | 855.916.3699 |

51.     Garcia knows each of the calls were by or on behalf of Defendants,

because the voicemail he received from (469) 649-5542 stated the call was from "Bonnie from Global Exchange Vacation Club." Three other calls were from that same number.

52. Further, the calls from (855) 916 3699 were clearly from or on behalf of Defendants, because the email GEVC sent to Garcia on June 3, 2021 disclosed GEVC could be called back at that number.

53. Accordingly, each of the calls listed in the chart above were made by or on behalf of Defendants to solicit timeshare products/services and absent consent or any established business relationship.

54. As a result of the foregoing, Garcia experienced frustration, annoyance, irritation and a sense that his privacy had been invaded by Defendants.

55. The foregoing acts and omissions by Defendants were in violation of the National Do-Not-Call Rules and Internal Do-Not-Call Rules of the TCPA and its corresponding regulations.

## CLASS ALLEGATIONS

56. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

57. Plaintiff seeks to represent the following classes:

**National Do-Not-Call Registry (NDNC) Class:** All persons in the United States who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of Defendants, from four years prior to the date of this complaint through the date the Court certifies the class, while such number was registered with the National Do-Not-Call Registry.

**Internal Do-Not-Call Registry (IDNC) Class:** All persons in the United States who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of Defendants, from four years prior to the date of this complaint through the date the Court certifies the class, during which time Defendants had not instituted or maintained the procedures or minimum standards required under 47 C.F.R. § 64.1200(d).

58.    Excluded from the NDNC and IDNC Classes are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

59.    The putative class members' identities are readily ascertainable from Defendants' records or records within Defendants' control.

60.    Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

61.    Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. Plaintiff will fairly and adequately protect the interests of the class members insofar and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this class action lawsuit. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests which might cause them not to vigorously pursue this action.

62.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

63.    Class Members are so numerous that the individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

64.    Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common

legal and factual questions include, but are not limited to the following:

      a.      Whether Defendants scrub or otherwise consult the federal Do Not Call registry before calling numbers;

      b.      Whether Defendants have meaningful and enforced internal do-not-call policies and procedures;

      c.      Whether Defendants' conduct violates 47 U.S.C. § 227(c) and the corresponding rules and regulations implementing the TCPA; and,

      d.      Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendants' conduct.

65.    Plaintiff and the putative class members have claims arising out of Defendants' uniform course of conduct, namely improperly placing solicitation calls to Plaintiff and the putative class members.

66.    The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

67.    Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23.  Such modified definitions may be

more expansive to include consumers excluded from the foregoing definitions.

68. Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiff and Class members for which they have no adequate remedy at law.

**FIRST CAUSE OF ACTION**
**(Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(c)**

69. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

70. Plaintiff brings this Count individually and on behalf of all others similarly situated.

71. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the national Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii), (e).

72. The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the national Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

73. In addition, the TCPA allows the Court to enjoin Defendants' violations of the TCPA's regulations prohibiting calls and texts to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5)(A).

74. By calling and texting Plaintiff and the putative class members after their numbers were registered on the National Do Not Call Registry, Defendants violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

75. On information and belief, Defendants and/or their agents routinely

make outgoing calls or send texts to residential and cellular telephones in the regular course of their telemarketing campaigns alleged above. Defendants violated 47 C.F.R. § 64.1200(c) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other NDNC Class members. Defendants violated 47 C.F.R. § 64.1200(c).

76.     Defendants' violations are knowing and willful because Defendants knew or should have known that Plaintiff and NDNC Class members had their numbers registered on the Do Not Call Registry.

77.     The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

78.     Plaintiff and NDNC Class members are entitled to damages of $500.00 per violation for each call placed and text sent by Defendants and up to $1,500.00 per violation if the Court finds Defendants willfully violated the TCPA.

79.     Plaintiff, individually, and on behalf of the other NDNC Class members, seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants to stop their violations of the TCPA.

80.     Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff and the NDNC Class are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

## SECOND CAUSE OF ACTION
**(Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(d) Against Defendants By Plaintiff, Individually, and on Behalf of the IDNC Class)**

81.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

82.     Plaintiff brings this Count individually and on behalf of all others similarly situated.

83.     Section 227(c) of the TCPA requires the FCC to enact regulations to

protect residential telephone subscribers' privacy rights. A private right of action exists for failing to maintain and/or provide internal do-not-call policies. 47 U.S.C. § 227(c)(5).

84.    Through those powers delegated by Congress, the FCC promulgated regulations including CFR 64.1200 which provides in relevant part:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1)    Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2)    Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3)    Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made [and] must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .
>
> (4)    Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

47 C.F.R. § 64.1200(d), (e).

85.    Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(3) by making telemarketing calls while they failed to honor consumer requests not to receive calls from or on behalf of Defendants, and/or did not record such requests. Even after Plaintiff clearly expressed his desire not to receive any more telephone calls from Defendants, Defendants made two or more calls to Plaintiff, in order to

sell their timeshare interests. Defendants fail to honor consumer requests not to receive calls from or on behalf of Defendants.

86.     Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(1) by making telemarketing calls while they did not have a written policy for maintaining a do-not-call list, and/or such policy was not available upon demand. Plaintiff requested Defendants' written policy for maintaining a do-not-call list in October 2021, and Defendants never provided one. Defendants either do not have a written policy for maintaining a do-not-call list, or do not provide it on demand.

87.     On information and belief, and in addition or the alternative, Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(2) by making telemarketing calls while they had failed to train their personnel in the existence and use of their do-not-call list. Plaintiff alleges various violations of 47 C.F.R. § 64.1200(d) above. To the extent Defendants claim they instituted and maintained procedures and minimum standards prescribed by 47 C.F.R. § 64.1200(d), but that their personnel made a mistake implementing their do-not-call list, Defendants failed to adequately train their personnel.

88.     Defendants violated 47 C.F.R. § 64.1200(d) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other IDNC Class members while failing to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d).

89.     Defendants violated Plaintiff's rights under § 227(c) and CFR § 64.1200(d) through the aforementioned acts and omissions.

90.     Defendant' violations were knowing and willful because they knew they had failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d) in the manner alleged above.

91.     The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or

excuse.

92.   Plaintiff and IDNC Class members are entitled to damages of $500.00 per violation for each call placed and text sent by Defendants and up to $1,500.00 per violation if the Court finds Defendants willfully violated the TCPA.

93.   Plaintiff, on his own behalf, and on behalf of the other IDNC Class members, seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants to stop their violations of the TCPA.

94.   Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff and the IDNC Class are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

## PRAYER FOR JUDGMENT

WHEREFORE, Plaintiff, Javier Garcia, individually, and/or behalf of all other similarly situated, requests the Court grant the following relief against Defendants Global Exchange Vacation Club and Global Exchange Development Corp., Resort Vacations, Inc., and Does 1 to 10 as follows:

a.   Enter an order against Defendants pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representative;

b.   Enter an order appointing Preston Law Offices and Kimmel & Silverman, P.C. as class counsel;

c.   Enter judgment in favor of Plaintiff and the NDNC and IDNC Classes for all damages available under the TCPA, including actual and statutory damages per violation of 47 U.S.C. § 227(c), consistent with proof at trial;

d.   Enter a judgment in favor of Plaintiff and the NDNC and IDNC Class that enjoins Defendants from violating the TCPA's regulations in the manner and/or using the means as alleged above and consistent with proof;

e.   Award Plaintiff and the NDNC and IDNC all expenses of this action, attorneys' fees and costs under California Code of Civil Procedure § 1021.5 in favor of Plaintiff and the NDNC and IDNC Classes, and require Defendants to pay the costs and expenses of class notice and administration; and,

f.    Award Plaintiff and the NDNC and IDNC such further and other relief the Court deems just and appropriate.

Dated: December 9, 2024           By: s/Ethan Preston

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

Jacob U. Ginsburg (*pro hac vice* anticipated)
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
KIMMEL & SILVERMAN, P.C.
30 East Butler Ave.
Ambler, PA 19002
Telephone: (267) 468-5374
Facsimile: 215-540-8817

*Attorneys for Plaintiff, individually, and on behalf of all others similarly situated*

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: December 9, 2024        By: s/Ethan Preston

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

Jacob U. Ginsburg (*pro hac vice* anticipated)
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
KIMMEL & SILVERMAN, P.C.
30 East Butler Ave.
Ambler, PA 19002
Telephone: (267) 468-5374
Facsimile: 215-540-8817

*Attorneys for Plaintiff, individually, and on behalf of all others similarly situated*